LAURA E. DUFFY
United States Attorney
JOSEPH P. PRICE, JR.
Assistant U.S. Attorney
California State Bar No. 131689
DOUGLAS KEEHN
Assistant U.S. Attorney
California State Bar No. 233686
Office of U.S. Attorney
880 Front Street, Room 6293
San Diego, California 92101-8893
(619) 546-7642/7573
joseph.price@usdoj.gov
douglas.keehn@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOEL I. BERNSTEIN; and<br>JOEL I. BERNSTEIN, M.D., INC.,<br>a California Corporation,<br><br>Defendants. | Case No. **'13CV0153 BEN DHB**<br><br>**UNITED STATES' COMPLAINT AND DEMAND FOR JURY TRIAL** |

The United States of America, by its undersigned attorneys, alleges as follows:

**NATURE OF ACTION**

1. This action arises from a scheme to defraud Medicare. On hundreds of separate occasions from at least January 19, 2007, through at least May 18, 2011, Defendant Joel I. Bernstein, a licensed physician specializing in oncology, and his medical practice, Defendant Joel I. Bernstein, M.D., Inc., billed the Medicare program and received United States Government payments for administering foreign-sourced oncology drugs that were not approved as safe and effective by the United States Food and Drug Administration for use on patients in the United States and were not approved

by the United States and the Department of Health and Human Services for payment by the Medicare program. On hundreds of separate occasions during the same period, Defendants also billed the Medicare program and received Government payments for medical services associated with the administration of such unapproved drugs to patients for the treatment of cancer. In each instance, Defendants knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval, and knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim, in order to receive Government payment for the unapproved drugs and medical services associated with the administration of the unapproved drugs.

2. The United States brings this action to recover damages and civil penalties under the False Claims Act, 31 U.S.C. §§ 3729-33, *amended by* the Fraud Enforcement and Recovery Act of 2009 (FERA), Pub.L. No. 111-21, S. 386 (2009), and to recover all available damages under common law for unjust enrichment, payment under mistake of fact, and fraud. The United States also invokes its entitlement to pre-judgment and post-judgment remedies pursuant to the Federal Debt Collection Procedures Act, 28 U.S.C. §§ 3001-3308.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1345 and 31 U.S.C. § 3730(a). This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because Defendants are located and transact business in this district, and the acts proscribed by 31 U.S.C. § 3729 occurred in this district.

4. Venue is proper in this district pursuant to 31 U.S.C. § 3732 and 28 U.S.C. § 1391(b) because Defendants are located and transact business in this district, and the acts proscribed by 31 U.S.C. § 3729 occurred in this district.

5. The United States commences this action timely and in accordance with any applicable statutes of limitations.

//

//

## PARTIES

6. Plaintiff United States of America files this Complaint on behalf of the United States Department of Health and Human Services ("HHS"), and its component, Centers for Medicare and Medicaid Services.

7. Defendant Joel I. Bernstein ("Bernstein") is a physician licensed in the State of California, specializing in oncology, and a resident of the Southern District of California. At all times relevant to this Complaint, Bernstein was a participating provider in federally-funded health care programs, including Medicare. At all times relevant to this Complaint, Bernstein conducted business in this district individually and as Joel I. Bernstein, M.D., Inc., in which he is an officer and owner.

8. Defendant Joel I. Bernstein, M.D., Inc. ("Bernstein, Inc.") is a registered corporation with the California Secretary of State, located in and doing business in this district. At all times relevant to this Complaint, Bernstein, either individually or through various other entities, owned, controlled, and directed the affairs of Bernstein, Inc.

9. At all times relevant to this Complaint, Bernstein, Inc. acted through its employees and agents, including Bernstein. Under agency principles, Bernstein, Inc. is liable for the acts alleged herein because such acts were committed by Bernstein and other employees or agents of Bernstein, Inc. within the scope of their actual and apparent authority and for the benefit of the corporation.

10. Defendants Bernstein and Bernstein, Inc. are jointly and severally liable for all the acts alleged herein.

## OVERVIEW OF MEDICARE

**The Medicare Program**

11. In 1965, Congress enacted Title XVIII of the Social Security Act, which established the Health Insurance for the Aged and Disabled Program, popularly known as the Medicare Program or simply Medicare, to pay for the costs of certain healthcare services. The Medicare Program is a federally funded health insurance program that provides funds for health care services to persons aged 65 and above and to certain

disabled persons. *See* 42 U.S.C. §§ 1395 *et seq*.

12. The Medicare Program has several parts, including Part B, which authorizes payment for medical and other health services, including physician services, laboratory services, outpatient care and therapy, diagnostic services, radiology services, and a limited number of prescription drugs. Part B covers injectable or intravenous drugs, including cancer drugs, furnished incident to a physician's services, and certain additional drugs, including immunosuppressive drugs, certain oral anti-cancer drugs and anti-emetic drugs.

13. Part D of the Medicare Program was enacted as part of the Medicare Prescription Drug, Improvement and Modernization Act of 2003, Pub. L. 108-173. Part D provides certain prescription drug benefits for Medicare beneficiaries.

14. The United States, through HHS, administers the Medicare Program. HHS has delegated the administration of the Medicare Program to its component agency, Centers for Medicare and Medicaid Services ("CMS"). The United States pays Medicare claims from the Medicare Trust Fund through CMS, which contracts with private insurance carriers to process and pay Medicare claims.

**Medicare Billing Procedures**

15. Health care providers desiring to treat Medicare beneficiaries must apply to Medicare for a provider number, which is used to process and pay claims (also known within the context of the Medicare Program as reimbursement). To become a Medicare provider and eligible for Medicare reimbursement, health care providers must certify that they agree to abide by Medicare laws, regulations, and program instructions and conditions. All providers that bill Medicare for services also have a duty to be knowledgeable about the statutes, regulations, and program instructions and conditions regarding coverage for services for which they seek reimbursement.

16. Medicare providers certify that they understand that reimbursement of a claim by Medicare is conditioned upon the claim and underlying transaction complying with laws, regulations, and program instructions and conditions, and on the provider's

4

ongoing compliance with all applicable conditions of participation in the Medicare Program. With each submission of a claim for payment to the Medicare Program, the provider certifies to CMS that the claim is correct and complete, and that it is properly payable.

17. At all times relevant to this Complaint, it was a condition of the Medicare Program that Medicare would provide reimbursement only for drugs approved by the United States Food and Drug Administration ("FDA") for use in the United States. At all times alleged herein, Medicare providers were obligated to know, and Defendants did know, that Medicare would provide reimbursement only for drugs approved by the FDA for use in the United States.

18. At all times relevant to this Complaint, it was a condition of the Medicare Program that Medicare would provide reimbursement only for services, such as office visits and the administration of drugs, that were associated with drugs approved by the FDA for use in the United States. At all times alleged herein, Medicare providers were obligated to know, and Defendants did know, that Medicare would provide reimbursement only for services, such as office visits and the administration of drugs, that were associated with drugs approved by the FDA for use in the United States.

## ALLEGATIONS

19. At all times relevant to this Complaint, pursuant to Bernstein's application to become a Medicare provider, Bernstein had a Medicare provider number for the processing and payment of Medicare claims submitted by or on behalf of Defendants.

20. At all times relevant to this Complaint, Defendants were in the business of providing medical care to oncology patients, including the administration of prescription oncology drugs in Defendants' offices.

**The Fraudulent Scheme**

21. Between January 19, 2007, and May 18, 2011, Defendants, including Bernstein, Inc. through its employees acting within the scope of their employment and for the benefit of Defendants, ordered from a variety of sources, $3,411,671.08, or more,

5

of non-FDA-approved prescription oncology drugs purporting to contain the same active ingredient as certain oncology drugs sold in the United States but that were intended for use in markets outside the United States. Such referenced oncology drugs that Defendants purchased from these suppliers included non-FDA-approved drugs purporting to contain the same active ingredient as drugs sold in the United States as Abraxane®, Alimta®, Aloxi®, Boniva®, Eloxatin®, Gemzar®, Neulasta®, Rituxan®, Taxotere®, Venofer®, and Zometa®, but which were intended for use in markets outside the United States.

22. Defendants were aware that the drugs they purchased, referenced in the proceeding paragraph herein, were intended for markets other than the United States and were not the drugs approved by the FDA for use in the United States because: (a) the packaging and shipping documents indicated that drugs were shipped to Defendants' office from outside the United States; (b) many of the invoices identified the origin of the drugs and intended markets for the drugs as countries other than the United States; (c) the labels did not bear the "Rx Only" language required by the FDA; (d) the labels did not bear the National Drug Code (NDC) numbers found on the versions of the drugs intended for the United States market; (e) many of the labels had information in foreign (non-English) languages; (f) the drugs were purchased at a substantial discount; (g) the packing slips indicated that the drugs came from the United Kingdom; and (h) Defendants' office had received a Notice from the FDA in October 2008, that a shipment of drugs had been detained because the drugs were unapproved.

23. At all times relevant to this Complaint, Defendants were aware that Medicare provides reimbursement only for drugs approved by the FDA for use in the United States.

24. Each drug approved by the FDA for use in the United States is given a specific code by Medicare for reimbursement claim purposes. In order to obtain reimbursement for the drugs that Defendants purchased from foreign sources that were administered to Medicare patients, as referenced above, Defendants, including

employees of Bernstein, Inc. acting within the scope of their employment and for the benefit of Defendants, knowingly submitted claims for payment to Medicare using the reimbursement codes for the FDA-approved drugs, falsely representing that the drugs were those approved by the FDA for use on patients in the United States.

25. On hundreds of separate occasions from at least January 19, 2007, through at least May 18, 2011, Defendants, utilizing the Medicare provider number applied for and obtained by Bernstein, knowingly and willfully defrauded Medicare by means of presenting, or causing to be presented, to an officer or employee of the United States Government, knowingly false claims for payment or approval, and by making or using, or causing to be made or used, knowingly false statements or records to get false or fraudulent claims for the referenced unapproved oncology drugs paid by the Government.

26. On hundreds of separate occasions from at least January 19, 2007, through at least May 18, 2011, Defendants, utilizing the Medicare provider number applied for and obtained by Bernstein, also knowingly and willfully defrauded Medicare by means of presenting, or causing to be presented, to an officer or employee of the United States Government, knowingly false claims for payment or approval, and by making or using, or causing to be made or used, knowingly false statements or records to get false or fraudulent claims for the medical services associated with the unapproved drugs referenced above, including office visits and administration of the drugs, paid by the Government.

27. Between January 19, 2007, and May 18, 2011, Defendants received $1,780,154.97, or more, in reimbursement from Medicare as a result of the fraudulent scheme described above. The referenced $1,780,154.97 includes the amount paid to the Defendants by the Government for the drugs, the professional component associated therewith, and the office visits associated therewith. Of the referenced $1,780,154.97, the amount received by Defendants from the Government solely for Defendants' charges for the drugs was $1,249,174.82, or more.

28. Defendants made or used, or caused to be made or used, false statements and records to get the United States to pay the false or fraudulent claims described above.

29. At all times relevant to this Complaint, Defendants knew there was no Medicare coverage for the drugs and services Defendants performed in conjunction with the fraudulent claims described above, and falsely represented their approval and coverage in order to deceive Medicare and to unlawfully induce Medicare to approve the claims and pay Defendants.

30. For each false claim, false statement, and false record alleged herein, Defendants had actual knowledge of the falsity thereof, or acted in deliberate ignorance or reckless disregard of the falsity thereof, at the time each was presented, caused to be presented, made, or used by Defendants.

31. At all times relevant to this Complaint, Defendants had actual knowledge that each claim, statement, and record they presented, made, or caused to be presented or made, to Medicare for billed services that were unapproved or false would constitute a false or fraudulent claim for payment, or would constitute a false statement or record to get a false or fraudulent claim paid, in violation of the False Claims Act.

32. Each of the false claims, false statements, and false records alleged herein was material and had a natural tendency to influence Government agency action to pay money or was capable of influencing Government agency action to pay money.

33. The United States paid the false or fraudulent claims described above because of the acts of Defendants and, as a result, the United States sustained damages.

34. From at least January 19, 2007, through at least May 18, 2011, the United States sustained a significant loss of funds as a result of the acts alleged herein, in an amount to be determined at trial.

//
//
//
//

## COUNT ONE

**False Claims Act, 31 U.S.C. § 3729(a)(1)(A),
previously 31 U.S.C. § 3729(a)(1) (1986)**

**(Presenting, or Causing the Presentment of, False or Fraudulent Claims)**

35. Paragraphs 1 through 34 are realleged and incorporated by reference as though fully set forth herein.

36. By virtue of the acts described above, between at least January 19, 2007, and at least May 18, 2011, Defendants knowingly presented, or caused to be presented, to an officer, employee or agent of the United States, false or fraudulent claims to obtain payment or approval, with knowledge that the claims were false, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A).

37. The United States paid the false or fraudulent claims described above because of the acts of Defendants and, as a result, the United States has sustained damages in an amount to be determined at trial.

## COUNT TWO

**False Claims Act, 31 U.S.C. § 3729(a)(1)(B),
previously 31 U.S.C. § 3729(a)(2) (1986)**

**(Making, or Causing to be Made, False Records or Statements to Get False or Fraudulent Claims Paid or Approved)**

38. Paragraphs 1 through 37 are realleged and incorporated by reference as though fully set forth herein.

39. By virtue of the acts described above, between at least January 19, 2007, and at least May 18, 2011, Defendants knowingly made or used, or caused to be made or used, false records and statements to get false or fraudulent claims paid or approved by the United States under the Medicare Program, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B).

40. The United States paid the false or fraudulent claims described above because of the acts of Defendants and, as a result, the United States has sustained damages in an amount to be determined at trial.

## COUNT THREE

### (Unjust Enrichment)

41. Paragraphs 1 through 40 are realleged and incorporated by reference as though fully set forth herein.

42. As a result of the conduct described above, the United States paid Defendants under the Medicare Program for claims which had been submitted for ineligible goods and services, for which Defendants were not entitled to payment.

43. By causing the United States to pay Defendants for such falsely billed goods and services as described above, and by the receipt of these Government monies, Defendants were unjustly enriched to the detriment of the United States under circumstances dictating that, in good equity and conscience, the money should be returned to the United States, in an amount to be determined at trial.

## COUNT FOUR

### (Payment Under Mistake of Fact)

44. Paragraphs 1 through 43 are realleged and incorporated by reference as though fully set forth herein.

45. As a result of the conduct described above, the United States made payments to Defendants in the erroneous belief that Defendants had performed services, provided goods, and incurred legitimate charges as claimed and were entitled to payment, without knowing that Defendants had billed Medicare for unallowed, unapproved, false, or fraudulent services, goods, or charges.

46. The United States relied on the material representations of Defendants concerning the services, goods, and charges for which Defendants sought payment. The United States would not have paid for such claims had it known the true facts.

47. By reason of the above-described conduct and payments, the United States paid monies to Defendants under mistake of fact and has been damaged in an amount to be determined at trial.

//

## COUNT FIVE

### (Common Law Fraud)

48. Paragraphs 1 through 47 are realleged and incorporated by reference as though fully set forth herein.

49. Defendants made material and false representations in claims presented to Medicare with knowledge of their falsity or reckless disregard for their truth, with the intention to defraud the United States and have the United States rely and act upon the misrepresentations to its detriment. The United States acted in justifiable reliance upon Defendants' misrepresentations by paying Defendants.

50. Had the true facts been known to the United States, Defendants would not have received payment of the false claims.

51. By reason of the payment of false claims presented to Medicare, the United States has been damaged in an amount to be determined at trial.

## COUNT SIX

### (Federal Debt Collection Procedures Act, 28 U.S.C. §§ 3100-3308)

52. Paragraphs 1 through 51 are realleged and incorporated by reference as though fully set forth herein.

53. By virtue of Defendants' conduct in knowingly presenting and causing the presentment of false or fraudulent claims, and in knowingly making or using, or causing to be made or used, false records and statements to get false or fraudulent claims paid or approved by the United States under the Medicare Program, between at least January 19, 2007, and at least May 18, 2011, as described above, the United States invokes its entitlement to pre-judgment and post-judgment remedies under the Federal Debt Collection Procedures Act ("FDCPA"), including attachment, receivership, garnishment, sequestration, and the setting aside of fraudulent transfers. The United States is entitled to pre-judgment discovery of the Defendants' financial condition and to discovery in support of the availability of remedies under the FDCPA.

//

54. Defendants are "debtors" within the meaning of the FDCPA.

55. The relief sought by the United States in this action, including damages and penalties under the False Claims Act, constitutes a "debt" within the meaning of the FDCPA.

**PRAYER FOR RELIEF**

WHEREFORE, the United States prays for judgment against Defendants, jointly and severally, as follows:

A. On Counts One and Two under the False Claims Act, for the amount of the United States' damages, trebled as required by law, and such civil penalties as are required by law, together with such further relief as may be just and proper.

B. On Count Three for unjust enrichment, for the damages sustained and amounts by which Defendants were unjustly enriched or by which Defendants retained illegally obtained monies, together with interest, costs, and expenses, and such further relief as may be just and proper.

C. On Count Four for payment under mistake of fact, for the damages caused by mistaken and unauthorized payments, together with interest, costs, and expenses, and such further relief as may be just and proper.

D. On Count Five for common law fraud, for compensatory and punitive damages in an undetermined amount, together with interest, costs, and expenses, and such further relief as may be just and proper.

//
//
//
//
//
//
//
//

E. On Count Six under the FDCPA, all pre-judgment and post-judgment remedies provided for by the FDCPA, as allowed under said law, as applicable, including discovery of the Defendants' financial condition and discovery in support of the availability of remedies under the FDCPA, and such further relief as may be just and proper.

DATED: January 18, 2013　　　　　　　　Respectfully submitted,

LAURA E. DUFFY
United States Attorney

/s/ Joseph P. Price, Jr.
JOSEPH P. PRICE, JR.
Assistant U.S. Attorney